**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**BOBBY CARL TERRICK**                                           **CIVIL ACTION**

**VERSUS**                                                                  **NO. 19-985**

**DARREL VANNOY, WARDEN**                               **SECTION: "B"(5)**

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.    *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the motion for abeyance be **DENIED** and the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

### Procedural History

*1.  State-Court Proceedings*

Petitioner, Bobby Carl Terrick, is a convicted inmate currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.    On September 13, 2001, he was charged with manslaughter by grand-jury indictment.[1]    He pleaded not guilty and filed a motion to

---

[1]  State Rec., Vol. 14 of 29, Grand Jury Indictment, Jefferson Parish, 9/13/01.    Jeremy Ross, a co-defendant tried separately, was also charged in the same indictment with second-

quash the indictment on grounds that he was not properly charged as a juvenile.    He also filed a motion to suppress his identification and statement.    Both motions were denied. On June 7, 2002, Terrick was re-indicted by a grand jury with one count of second-degree murder.[2]    In July 2002, a jury found him guilty of second-degree murder.[3]    His motions for a new trial and for post-verdict judgment of acquittal were denied.[4]    On August 16, 2002, he was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence.[5]

On direct appeal, he asserted that the evidence was insufficient to support his conviction.    He also challenged the trial court's refusal to grant his motion to suppress the statement as not knowingly or voluntarily made since he was only 16 years old and the denial of his motion for new trial given the insufficiency of the evidence.    The Louisiana Fifth Circuit Court of Appeal affirmed and remanded with instructions to provide him with written notice of the prescriptive period for seeking post-conviction relief.[6]    On March 26, 2004,

---

degree murder.

[2]  State Rec., Vol. 14 of 29, Grand Jury Indictment, 6/7/2002.

[3]  State Rec., Vol. 1 of 29, Minute Entry, 7/17/02.

[4]  State Rec., Vol. 1 of 29, Minute Entry, 8/2/02.

[5]  State Rec., Vol. 1 of 29, Minute Entry, 8/16/02.

[6]  *State v. Terrick*, 2003-515 (La. App. 5 Cir. 9/30/03), 857 So.2d 1153; State Rec., Vol. 15 of 29.

the Louisiana Supreme Court denied his application for writ of certiorari.[7]

Between 2004 and 2013, Terrick pursued post-conviction relief in the state courts. He filed numerous motions challenging his conviction and sentence at all levels of the state-court system with no success.[8]    During this same period, Terrick also filed two unsuccessful federal habeas corpus petitions, discussed at length later in this report.

In June 2013, following the United States Supreme Court decision in *Miller v. Alabama*, 567 U.S. 460 (2012), holding that the Eighth Amendment's prohibition of cruel and unusual punishment prohibits imposition of mandatory life in prison without the possibility of parole for juveniles, Terrick filed a motion to correct an illegal sentence requesting resentencing under *Miller*.[9]    A hearing was scheduled but continued numerous times for various reasons and he was unable to obtain a ruling for some time.    In March 2016, he filed a motion to amend the motion to correct an illegal sentence.    On November 30, 2017, the trial court held a hearing at which Terrick was represented by counsel.[10]    The trial court granted the motion to the extent it requested resentencing under *Miller* and resentenced Terrick pursuant to Louisiana Revised Statute 15:574.4(D), to life imprisonment with parole

---

[7]  *State v. Terrick*, 2003-3272 (La. 3/26/04), 871 So.2d 346; State Rec., Vol. 24 of 29.

[8]  These filings are set forth in the procedural history section of the State's response (Rec. Doc. 13, pp. 3-8); however they will not be discussed herein as they do not impact the current issues and the State does not challenge timeliness.

[9]  State Rec., Vol. 3 of 29, Motion to Correct Illegal Sentence, R.p. 611.

[10]  State Rec., Vol. 17 of 29, Transcript of November 30, 2017 hearing R.p. 3909.

eligibility after serving 25 years.[11]

Terrick filed a pro se supervisory writ application with the Louisiana Fifth Circuit Court of Appeal challenging the resentencing.[12]    He also, through counsel, filed a notice of appeal.    The court of appeal denied the writ since his proper avenue of relief was a direct appeal, which was pending.[13]    Terrick filed a supervisory writ application challenging the writ ruling with the Louisiana Supreme Court.[14]

In his second direct appeal, appellate counsel filed a brief asserting that she could find no nonfrivolous issues to raise and asking to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967).    Terrick filed a pro se brief asserting three errors, one challenging the denial of his writ and two challenging the resentence as a violation of due process, fair warning and *ex post facto* laws.    On August 29, 2018, the court of appeal granted the motion to withdraw, affirmed his resentencing and remanded for correction of the minute entry and commitment to reflect that he was resentenced pursuant to Section G (not D) of Louisiana Revised Statute 15:574.4.[15]    He did not file another writ application with the Louisiana

---

[11]    State Rec., Vol. 4 of 29, Minute Entry, 11/30/17.

[12]    State Rec., Vol. 22 of 29, Louisiana Fifth Circuit Writ No. 17-KH-681.

[13]    State Rec., Vol. 22 of 29, *Terrick v. State*, 17-KH-681 (La. App. 5th Cir. March 8, 2018).

[14]    State Rec., Vol. 28 of 29, Louisiana Supreme Court Writ No. 18-KO-532.

[15]    *State v. Terrick*, 18-KA-102 (La. App. 5 Cir. 8/29/18), 254 So.3d 1246; State Rec., Vol. 17 of 29.

Supreme Court as he currently had one pending from the denial of his supervisory writ application.    On January 14, 2019, the Louisiana Supreme Court denied his writ application.[16]

Terrick thereafter pursued separate post-conviction relief applications in the state courts on issues unrelated to his resentencing and challenging only his conviction (*i.e.*, the admissibility of his confession and the validity of the grand jury indictment).[17]    At the time he filed the instant federal habeas corpus petition, he did not raise these unexhausted claims.[18]

2. *Prior Federal Habeas Corpus Petitions*

Terrick filed his first federal habeas application in 2006.[19]    He asserted that the evidence was legally insufficient to support his conviction for second-degree murder and that he was denied due process on appeal when the appellate court denied his insufficiency-

---

[16]   *State v. Terrick*, 2018-KO-0532, 2019 WL 277609 (La. 1/14/19); State Rec., Vol. 28 of 29.

[17]   State Rec., Vol. 5 of 29, R.p. 1025 (November 2018 PCR challenging confession); State Rec., Vol. 29 of 29, *In Re: Terrick*, No. 19-KH-43 (La. App. 5th Cir. Feb. 19, 2019); Louisiana Supreme Court Writ No. 2019-KH-488; *see also* State Rec., Vol. 5 of 29, R.p. 1127 (April 2019 PCR challenging grand jury indictment).

[18]   Terrick filed a separate federal habeas corpus application, his fourth, wherein he attempted to assert these two claims for relief, but he failed to pursue authorization in the U.S. Fifth Circuit Court of Appeals to proceed in this Court.    *See* C.A. 19-11515 "B"(5) (E.D. La.).

[19]   *Terrick v. N. Burl Cain, Warden*, Civ. Action No. 06-541 "D"(6) (E.D. La. 2006) (setting forth procedural history in state court prior to 2006).

of-the-evidence claim.    He also raised a claim of vindictive prosecution in an amended petition.    On August 18, 2008, the magistrate judge issued a report and recommendation denying relief.    By order and judgment signed September 15, 2008, the district court adopted the recommendation denying habeas relief and dismissing the petition with prejudice.    His motion for certificate of appealability was denied by the United States Fifth Circuit Court of Appeals.

Terrick filed his second federal habeas application in May 2013.[20]    He asserted that the jury verdict was contrary to the evidence and the law.    This second or successive habeas petition was transferred to the United States Fifth Circuit Court of Appeals for authorization to proceed.    On October 16, 2013, the court of appeals issued an order denying authorization to proceed.[21]

3. *Current Federal Habeas Petition*

In February 2019, Terrick filed the instant federal application for habeas corpus relief, his third, asserting that the life sentence with the possibility of parole imposed on resentencing violated the constitutional prohibition against *ex post facto* laws and deprived him of due process and fair warning.[22]    The State does not dispute timeliness or exhaustion.

---

[20]    *Terrick v. N. Burl Cain, Warden*, Civ. Action No. 13-3493 "B"(5) (E.D. La. 2013).

[21]    See C.A. 13-3493, Rec. Doc. 6.

[22]    Rec. Doc. 3, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus. Though inartfully stated, the claims appear to be the same as those raised in his second direct appeal following the resentencing.    Rec. Doc. 3 at pp. 5, 7; *State v. Terrick*, 254 So.3d at 1250

The State argues that Terrick is not entitled to relief on the merits.[23]

Terrick has also filed a motion for abeyance seeking to stay the instant proceedings while he pursues exhaustion in the state courts of two claims challenging his conviction, which were not raised in this federal petition.[24]    He filed a separate federal application with respect to these other claims, his fourth such petition, but failed upon transfer to obtain authorization from the United States Fifth Circuit Court of Appeals to proceed with those claims in this Court.[25]    The State filed a response in opposition strenuously objecting to a stay of these proceedings as unwarranted.[26]

**Facts**

On his first direct appeal, the Louisiana Fifth Circuit briefly summarized the facts adduced at trial:

> Three witnesses testified at trial, including the investigating officer, a fact witness, and the coroner. The investigating officer, Detective John Drury of the Jefferson Parish Sheriff's Office Homicide Division, testified that at approximately 5:00 a.m. on July 27, 2001, he received a report of a man shot

---

(Assignments of Error Nos. 2 and 3).

[23]  Rec. Doc. 13.

[24]  Rec. Doc. 14.    His request to consolidate the two proceedings was initially denied as premature, Rec. Doc. 16, and his attempt to later revive the request to consolidate was denied because he failed to obtain authorization to proceed with the second or successive petition (containing unexhausted claims) in this Court, Rec. Doc. 20.    His request for leave to amend to include the claims was also denied.    Rec. Doc. 22.

[25]  See Civ. Action No. 19-11515 "B"(5).

[26]  Rec. Doc. 19.

in the head, located in the rear yard of 501 Wilker Neal Street in Kenner. Detective Drury responded to the call and found the victim, Edward Sanchez, still alive. The victim was taken to East Jefferson General Hospital where he subsequently died.

Dr. Susan Garcia of the Jefferson Parish Coroner's Office performed an autopsy on the victim. She testified that the victim died from a single gunshot to the head. In addition to the fatal wound, the autopsy revealed other injuries to the victim, including a bruised and swollen face and knuckles, lacerations of the head and abrasions of the chest. Toxicology tests run on the victim's blood and urine revealed the presence of cocaine and alcohol. A bullet jacket fragment was also recovered from the victim's body.

Detective Drury investigated the crime scene and had photographs of the area taken. The investigation revealed a footprint near the location where the victim's body was found and a blood trail running from the front of the residence to the rear. Testing disclosed that the blood matched the victim's. While searching the area around the residence, officers recovered a torn and bloodstained shirt, a bullet jacket fragment, and a dollar bill.

The investigation led Detective Drury to interview Rosemary Charles as a possible witness to the events surrounding this homicide. Ms. Charles gave police a statement about her observations on the night of the murder and then, based on a photographic line-up, identified defendant and Jeremy Ross as the men she saw assaulting the victim on that night.

Rosemary Charles was also called as a witness at trial. She testified that, on the evening of July 26, 2001, she went to a club in Kenner where she drank several beers. After she left the club, she walked to the house of a friend who lived on Wilker Neal Street, just off of Bengal Street in Kenner. From there, Ms. Charles walked to her brother's house, also located on Wilker Neal Street. According to Ms. Charles, it was approximately 3:00 or 4:00 a.m. on July 27, 2001 when Ms. Charles walked down Wilker Neal Street to her brother's house. In the 500 block of Wilker Neal, she saw three men engaged in an argument. The men were standing near a corner on Wilker Neal Street. Ms. Charles recognized two of the men as defendant and Jeremy Ross. She knew defendant and Ross from the neighborhood. According to Ms. Charles, the third man appeared to be either a light-skinned African–American or a Hispanic male. Ms. Charles testified that she walked past the three men on her way to her brother's house. She heard the third man, later identified as the victim, Edward Sanchez, say to

defendant and Ross, "I'm 5–0, I got all now." She heard one of the other two men say "5–0 my a—, I want my money." According to Ms. Charles, a physical encounter ensued and Sanchez was trying to take something from defendant and Ross. Ms. Charles continued walking to her brother's house, which was located four houses away from where the three men were located. As she approached her brother's residence, Ms. Charles looked back over her shoulder and she saw defendant and Ross kicking and punching Sanchez as he lay on the ground.

Ms. Charles entered her brother's residence and told him what she had just seen. Ms. Charles' brother cautioned her to stay inside his house. He also told her that he would walk her home to get some clothes so she could return and stay at his house while he went to work. Ms. Charles remained inside her brother's house approximately one-half hour. Thereafter, she and her brother left and walked down Wilker Neal Street. As the pair walked through the area where she had previously witnessed the three men, Ms. Charles could hear someone moaning from the rear of a blue house located on a corner of Wilker Neal Street. She saw the victim lying in the backyard of the house, and she thought he had been beaten. She did not realize the victim had been shot because she had not heard any gunshots. Ms. Charles' brother told her that this incident was none of her business, and the pair continued walking to Ms. Charles' residence. Thereafter, escorted by her brother, Ms. Charles returned to her brother's house where she remained until the next day.

Based on information Ms. Charles gave the police, along with the positive identification she provided during the photographic line-up, defendant and Jeremy Ross were arrested and booked for the murder of the victim. Ross declined to give police a statement, but defendant did give a statement to Detective Drury. In that statement, which was provided to the jury at trial, defendant admitted to punching the victim. He also admitted to chasing the victim to the rear of the house on Wilker Neal Street, along with Jeremy Ross. According to defendant's statement, while the men were in the rear yard, Jeremy Ross shot the victim with a .357 revolver.[27]

### Standards of Review on the Merits

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective

---

[27] *State v. Terrick*, 857 So.2d at 1155-1157.

Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.     A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."     28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").     With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002).     A state court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States

Supreme Court precedent.    *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010).    An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case."    *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694.    A state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief.    *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").    "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA.    *Harrington v. Richter*, 562 U.S. 86, 102 (2011).    Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents."    *Id.* (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

**Analysis**

*A.   "Second or Successive"*

As an initial matter, the Court addresses the State's concern regarding the potential "second or successive" nature of Terrick's petition.   Although the State acknowledges that both the sentence and errors alleged are new and therefore the instant petition may not be successive under Section 2244(b), the State nonetheless, in an abundance of caution, asserts that petitioner must first obtain authorization from the United States Fifth Circuit to file the technically successive petition.[28]   The Court notes that while the petition is certainly second-in-time, in that it follows earlier federal petitions filed by Terrick, it is not impermissibly successive.   He is challenging for the first time possible a new sentence that was imposed in 2017 following the United States Supreme Court pronouncements in *Miller v. Alabama*, 567 U.S. 460 (2012) and *Montgomery v. Louisiana*, 136 S.Ct. 718 (2016).   Under these circumstances, authorization is not necessary.   *See e.g.*, *Stewart v. Vannoy*, Civ. Action 16-8711, 2016 WL 7157082, at *3 (E.D. La. Oct. 13, 2016) (citing *In Re Stewart*, No. 14-30189 (5th Cir. June 18, 2014), *adopted* 2016 WL 7116104 (E.D. La. Dec. 7, 2016); *see also Burge v. Cain*, Civ. Action 13-721, 2015 WL 4168111, at *3 (E.D. La. July 1, 2015).

*B.   Claims for Relief: Due Process-Fair Warning and Ex Post Facto Violation*

On direct appeal, as here, Terrick asserted that he suffered an *ex post facto* violation and was deprived of due process requiring fair warning upon resentencing by application of

---

[28]   Rec. Doc. 13, p. 21.

newly enacted law that did not exist at the time of the commission of the crime.      In rejecting

these claims related to his resentencing, the Louisiana Fifth Circuit set forth the relevant

circumstances and state statutory law regarding parole eligibility and reasoned as follows:

**Pro se assignment of error numbers two and three**

Does the Due Process Clause 14th amendment and fair warning 5th Amendment of the U.S. Constitution and La. Const. (1974) Article 182 and Article 1315 null and void a judicial decisionmaking that retroactively apply a statutory enactment created after sentence of accused and commission of offense. (sic)

Does the Ex Post Facto Clause lack a legislative act to be applied retrospective abridging a pre-existing constitutional guarantee. (sic)

As we understand defendant's arguments in these two assignments of error, he asserts that his resentencing on November 30, 2017 under La. R.S. 15:574.4, violated the *Ex Post Facto* Clause and his constitutional rights to due process and fair warning. He indicates that he should have been resentenced to the lesser responsive verdict of manslaughter, the law that was in effect at the time he committed the offense. Consideration of this issue, along with a full discussion of the law and analysis of the final sentence, follows.

Under *Miller*, Louisiana's sentencing scheme that mandated life in prison without the possibility of parole for juvenile offenders could no longer stand. To comply with the directive set forth in *Miller*, the Louisiana Legislature passed 2013 La. Act 239 ("the Act"). The Act created La. C.Cr.P. art. 878.1, which directs the district courts to conduct a hearing before sentencing to determine whether the life sentence to be imposed on a juvenile homicide offender should be with or without parole eligibility. The Act also created La. R.S. 15:574.4(E)(1), which provides the conditions that must be met by any juvenile homicide offender serving a sentence with a judicial determination of parole eligibility pursuant to article 878.1 in order to be considered for parole.

On November 5, 2013, in *State v. Tate*, 12-2763 (La. 11/5/13), 130 So.3d 829, *cert. denied*, 572 U.S. 1137, 134 S.Ct. 2663, 189 L.Ed.2d 214 (2014), the Louisiana Supreme Court held that *Miller*, which set forth a new rule of constitutional procedure for sentencing, was not subject to retroactive

application and was to be applied prospectively only. The *Tate* court further held that La. C.Cr.P. art. 878.1 and La. R.S. 15:574.4(E)(1), which codified the *Miller* rule, applied prospectively only.

However, in January of 2016, in *Montgomery v. Louisiana*, 577 U.S. ––––, 136 S.Ct. 718, 193 L.Ed. 2d 599 (2016), as revised (Jan. 27, 2016), the United States Supreme Court abrogated the *Tate* decision and held that *Miller* applied retroactively to defendants whose convictions and sentences became final prior to the *Miller* decision in 2012. In *Montgomery*, the United States Supreme Court addressed concerns that the retroactive application of *Miller* would place an undue hardship on states. The Court stated:

> Giving *Miller* retroactive effect, moreover, does not require States to relitigate sentences, let alone convictions, in every case where a juvenile received life without parole. A State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them. Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity - and who have since matured - will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment. *Montgomery*, 136 S.Ct. at 736 (citation omitted).

The United States Supreme Court, thereafter, remanded the matter to the Louisiana Supreme Court. On remand, in *State v. Montgomery*, 13-1163 (La. 6/28/16), 194 So.3d 606, the Louisiana Supreme Court acknowledged the *Miller* ruling and reasoning and remanded the matter to the district court for resentencing of defendant.

In the matter before us, defendant was resentenced pursuant to La. R.S. 15:574.4 and La. C.Cr.P. art. 878.1, which have been amended and reenacted subsequent to the *Montgomery* opinion.[29]

---

[29]  La. C.Cr.P. art. 878.1 was subsequently amended by 2017 La. Acts No. 277, § 2, effective August 1, 2017, to restate that the "sole purpose of the hearing is to determine whether the sentence shall be imposed with or without parole eligibility[,]" among other minor changes. La. R.S. 15:574.4 was subsequently amended by 2017 La. Acts No. 277, § 1, effective August 1, 2017, to reduce the required time to 25 years from the prior time of 35 years.

La. R.S. 15:574.4(G)(1), provides:

G. (1) Notwithstanding any provision of law to the contrary, any person serving a sentence of life imprisonment for a conviction of first degree murder (R.S. 14:30) or second degree murder (R.S. 14:30.1) who was under the age of eighteen years at the time of the commission of the offense and whose indictment for the offense was prior to August 1, 2017, shall be eligible for parole consideration pursuant to the provisions of this Subsection if a judicial determination has been made that the person is entitled to parole eligibility pursuant to Code of Criminal Procedure Article 878.1(B) and all of the following conditions have been met:

(a) The offender has served twenty-five years of the sentence imposed.

(b) The offender has not committed any major disciplinary offenses in the twelve consecutive months prior to the parole hearing date. A major disciplinary offense is an offense identified as a Schedule B offense by the Department of Public Safety and Corrections in the Disciplinary Rules and Procedures for Adult Offenders.

(c) The offender has completed the mandatory minimum of one hundred hours of pre-release programming in accordance with R.S. 15:827.1.

(d) The offender has completed substance abuse treatment as applicable.

(e) The offender has obtained a GED certification, unless the offender has previously obtained a high school diploma or is deemed by a certified educator as being incapable of obtaining a GED certification due to a learning disability. If the offender is deemed incapable of obtaining a GED certification, the offender shall complete at least one of the following:

(i) A literacy program.

(ii) An adult basic education program.

15

    (iii) A job skills training program.

    (f) The offender has obtained a low-risk level designation determined by a validated risk assessment instrument approved by the secretary of the Department of Public Safety and Corrections.

    (g) The offender has completed a reentry program to be determined by the Department of Public Safety and Corrections.

The applicable version of art. 878.1 provides in pertinent part as follows:

    B. (1) If an offender was indicted prior to August 1, 2017, for the crime of first degree murder (R.S. 14:30) or second degree murder (R.S. 14:30.1) where the offender was under the age of eighteen years at the time of the commission of the offense and a hearing was not held pursuant to this Article prior to August 1, 2017, to determine whether the offender's sentence should be imposed with or without parole eligibility, the district attorney may file a notice of intent to seek a sentence of life imprisonment without the possibility of parole within ninety days of August 1, 2017. If the district attorney timely files the notice of intent, a hearing shall be conducted to determine whether the sentence shall be imposed with or without parole eligibility. If the court determines that the sentence shall be imposed with parole eligibility, the offender shall be eligible for parole pursuant to R.S. 15:574.4(G). If the district attorney fails to timely file the notice of intent, the offender shall be eligible for parole pursuant to R.S. 15:574.4(E) without the need of a judicial determination pursuant to the provisions of this Article. If the court determines that the sentence shall be imposed without parole eligibility, the offender shall not be eligible for parole.

The defendant argues that applying La. R.S. 15:574.4 in resentencing a defendant pursuant to *Miller* violates the *ex post facto* clause and his constitutional rights to due process and fair warning. He further argues he should be resentenced to the lesser responsive verdict of manslaughter, the law that was in effect at the time he committed the offense.

Art. I, § 10 of the United States Constitution and La. Const. art. I, § 23 prohibit

*ex post facto* application of the criminal law by the state. The focus of the *ex post facto* inquiry is whether a new law redefines criminal conduct or increases the penalty by which the crime is punishable. Application of La. R.S. 15:574.4(E) in the instant matter did neither. *State v. Jackson*, 51,527 (La. App. 2 Cir. 8/9/17), 243 So.3d 1093, 1099, *writ denied*, 17-1540 (La. 5/25/18), 243 So.3d 565.

Eligibility for parole is the sole question to be answered in a *Miller* hearing. *State v. Stewart*, 17-297 (La. App. 5 Cir. 11/29/17), 232 So.3d 1284. There is no consideration of whether the defendant was entitled to a downward departure from the mandatory sentence of life imprisonment at hard labor. Rather, the trial court is required to consider only whether that mandatory sentence should include parole eligibility. *Id*.

Moreover, Louisiana courts have repeatedly rejected the argument that resentencing pursuant to *Miller*, requires a defendant to be sentenced under the manslaughter statute. *State v. Brown*, 51,418 (La. App. 2 Cir. 6/21/17), –– – So.3d ––––, *writ denied*,17-1287 (La. 4/27/18), 241 So.3d 306, and cases cited therein.

In the matter before us, the record shows that the trial judge adhered to the law set forth in *Miller* and its progeny in resentencing. According to that law, the trial judge's purpose at the hearing was to determine whether to resentence defendant to life imprisonment with parole eligibility or life imprisonment without parole eligibility. After reviewing the law, the exhibits, and the facts of the case, the trial judge chose to vacate defendant's sentence and resentence him to life imprisonment with parole eligibility in twenty-five years, the less severe of the two potential penalties. Defendant's sentence now provides him with a meaningful opportunity for release. In light of the foregoing, we find that defendant's sentence was neither excessive, nor an infringement of the principles of *ex post facto*. Therefore, we find no merit in defendant's assignments of error.[30]

The Louisiana Supreme Court subsequently denied relief without additional stated reasons.

In support of his claims, Terrick directs the Court's attention to the arguments he

---

[30]  *State v. Terrick*, 254 So.3d at 1250-53 (footnote in original).

made on direct appeal and in his motion to correct the illegal sentence.    He first asserts that the sentence violates his due-process rights and the principle of fair warning.    He argues that the law in effect at the time he committed the offense is determinative of the penalty to be imposed.    In this case, however, the penalty for second-degree murder, mandatory life imprisonment without parole, was declared unconstitutional.    He contends that the appropriate remedy to correct an illegal sentence is to remand for resentencing to the most serious penalty for the next lesser responsive verdict.    *State v. Craig*, 340 So.2d 191 (La. 1976) (involving resentencing individuals with mandatory death sentences for aggravated rape to the most serious penalty for the next lesser responsive verdict).    Thus, Terrick maintains that the only penalty available was the sentence for the responsive verdict of manslaughter, which carried a maximum of 40 years imprisonment.    Terrick contends the application of newly enacted law to impose a sentence of life imprisonment with the possibility of parole after 25 years deprived him of the fair warning to which he was entitled.

To the extent Terrick suggests that the state courts misapplied state law in determining his new sentence, his claim fails in two respects.    First, Louisiana state courts have soundly rejected the application of *Craig* in situations involving mandatory life sentences for juveniles who were resentenced following *Miller*.    *State v. Francis*, 17-651 (La. App. 5 Cir. 5/16/18), 247 So.3d 199, 203-04; *State v. Evans*, 51,811 (La. App. 2 Cir. 1/10/18), 245 So.3d 1112; *State v. Jones*, 15-157 (La. App. 5 Cir. 9/23/15), 176 So.3d 713, 719-20; *State v. Lewis*, 17-651 (La. App. 4 Cir. 4/18/18), 244 So.3d 527, 532; *State v. Plater*,

51,338 (La. App. 2 Cir. 5/17/17), 222 So.3d 897, 901.    The appropriate remedy under Louisiana law is not to sentence juvenile offenders with mandatory life sentences for murder to the next lesser responsive verdict of manslaughter, as Terrick contends.

Second, and more importantly, any claim that urges only a misapplication of state law is not properly before this Court for consideration on federal habeas review.    "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."    *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Charles v. Thaler*, 629 F.3d 494, 500-01 (5th Cir. 2011) ("Under § 2254, federal habeas courts sit to review state court misapplications of federal law. A federal court lacks authority to rule that a state court incorrectly interpreted its own law. When, as here, a state court's legal conclusions are affirmed by the highest court in that state, those conclusions are state law."); *Molo v. Johnson*, 207 F.3d 773, 776 n.9 (5th Cir. 2000) ("Federal habeas review does not extend to state court conclusions of state law."); *Hogue v. Johnson*, 131 F.3d 466, 506 (5th Cir. 1997) (a disagreement as to state law is not cognizable on federal habeas review).    Federal habeas corpus relief may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of state law will not suffice. 28 U.S.C. § 2254; *Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).

As for his federal claim, due process requires fair warning of the prohibited conduct and the penalties for that conduct.    *Rogers v. Tennessee*, 532 U.S. 451, 457, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001).    Terrick's fair-warning claim is founded on the United States

Supreme Court's decision in *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964).[31]   In *Bouie*, the defendants staged a "sit in" of a segregated lunch counter. When they refused to leave, they were charged with and subsequently convicted of criminal trespass, which by its terms forbade only "entry upon the lands of another ... after notice ... prohibiting such entry...."   Although it was undisputed that defendants did not violate the specific terms of that statute, the South Carolina Supreme Court nevertheless affirmed their convictions because, *after* defendants' actions, the statute had been judicially construed as encompassing the broader situation where a person simply remains on the premises of another after receiving notice to leave.   The United States Supreme Court reversed the convictions on due-process grounds, noting:

> When a[n] ... unforeseeable state-court construction of a criminal statute is applied retroactively to subject a person to criminal liability for past conduct, the effect is to deprive him of due process of law in the sense of fair warning that his contemplated conduct constitutes a crime.

*Id.* at 354-55.   The Court held: "If a judicial construction of a criminal statute is *unexpected and indefensible* by reference to the law which had been expressed prior to the conduct in issue, it must not be given retroactive effect."   *Id.* at 354, 84 S.Ct. 1697 (emphasis added) (internal quotation marks omitted); *see also Rogers*, 523 U.S. at 461, 118 S.Ct. 1428.

Unlike the situation in *Bouie*, Terrick urges a violation of fair warning principles based on imposition of a life sentence that now affords him parole eligibility after 25 years under

---

[31]  Rec. Doc. 3-1, p. 31.

current Louisiana law following the Supreme Court pronouncement that rendered his original mandatory sentence of life without benefit of parole for second-degree murder unconstitutional.    To the extent he complains that this scenario (*i.e.*, failure to follow *Craig*, *supra* and impose the sentence for the next lesser responsive verdict) violated principles of due process and fair warning, that argument has been considered and flatly rejected by federal courts on numerous occasions.    Federal district courts have uniformly denied such arguments in the context of comparable *Graham* violations (minors sentenced to unconstitutional mandatory life imprisonment without parole for non-homicide crimes), remedied to afford parole eligibility pursuant to *State v. Shaffer*, 11-1756 (La. 11/23/11), 77 So.3d 939, which rejected the *State v. Craig* methodology, as well as cases involving *Miller* violations.    *See Looney v. Vannoy,* Civ. Action No. 3:19-CV-00939, 2019 WL 6034957, at *3 (W.D. La. Oct. 23, 2019), *adopted* 2019 WL 6003239 (W.D. La. Nov. 13, 2019); *Jackson v. Vannoy*, Civ. Action No. 5:19-CV-665-P, 2019 WL 4145727, at *3 (W.D. La. July 11, 2019), *adopted* 2019 WL 4166762 (W.D. La. Aug. 30, 2019); *Jones v. LeBlanc*, Civ. Action No. 16-844, 2017 WL 5125766, at *4-6 (E.D. La. March 17, 2017), *adopted* 2017 WL 5068346 (E.D. La. Nov. 03, 2017); *Skipper v. Cain*, Civ. Action No. 14-651-JJB-RLB, 2017 WL 6884335, at *2-3 (M.D. La. Nov. 6, 2017), *adopted* 2018 WL 343851 (M.D. La., Jan. 09, 2018); *Burge v. Cain*, Civ. Action No. 13-721, 2015 WL 4168111, at *8-11 (E.D. La. July 1, 2015); *Walder v. Cain*, Civ. Action No. 13-4745, 2015 WL 349285, at *4 (E.D. La. Jan. 26, 2015).

In rejecting a similar argument that arose upon remedying a *Graham* violation, this

Court reasoned that petitioner did not have a reasonable expectation that the violation would be remedied in the same manner as for *Roberts* violations (holding mandatory death sentences unconstitutional), that is, by applying the *Craig* methodology and imposing the penalty for the most serious penalty for the next lesser-included offense.    *Burge*, 2015 WL 4168111 at *11.    In *Burge*, the Court explained:

> As an initial matter, it is axiomatic that because "there often arises a need to clarify or even to reevaluate prior opinions as new circumstances and fact patterns present themselves," *Rogers v. Tennessee*, 532 U.S. 451, 461 (2001), jurisprudence necessarily evolves rather than remains static. In light of that reality, a petitioner's right to substantive due process in judicial decisionmaking is violated only where there has been an "unjustified and unpredictable break[ ] with prior law." *Id.* at 462. Therefore, a change in decisional criminal law offends due process and violates the principle of fair warning "only where it is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue." *Id.* (quotation marks omitted).
>
> The Court of Appeal's reliance on *Shaffer* does not cross that impermissible line. *Graham* held that sentencing juvenile offenders to life without the possibility of parole for non-homicide offenses violated the Eighth Amendment; as a result, the state courts were then required to fashion a remedy for inmates serving such sentences. Petitioner notes that when resentencing was similarly required for some inmates after the United States Supreme Court held that mandatory death sentences were unconstitutional in *Roberts v. Louisiana*, 428 U.S. 325 (1976), the Louisiana Supreme Court held that the appropriate remedy was to resentence them by imposing the most serious penalty for the next lesser included offense. *State v. Craig*, 340 So.2d 191 (La. 1976). Petitioner argues that remedy is therefore similarly appropriate for inmates impacted by *Graham*.
>
> Petitioner's argument is flawed. Clearly, the state courts could have adopted a similar remedy as a means to fix *Graham* violations; however, that simply is not the issue. Rather, the issue is whether petitioner had a reasonable expectation that *Graham* violations would be remedied in the same manner as *Roberts* violations. He did not. *Graham* was a new case presenting a different

> problem, and the Louisiana Supreme Court in *Shaffer* opted to solve that problem in a different way. *Shaffer* did not constitute a break with prior decisional law with respect to *Graham*-type violations, because no such law directly on point existed. As a result, it simply cannot be said that petitioner had a reasonable expectation that *Graham* violations would necessarily be remedied in the same way as *Roberts* violations or that the Court of Appeal's application of *Shaffer* was so "unexpected and indefensible" as to violate his right to substantive due process.

*Id.*   Similarly here, *Miller* was decided in 2012 and presented a different issue.   We cannot conclude that Terrick had any reasonable expectation that the state court would follow *Craig* and that he would be resentenced to the penalty for the next lesser offense, such that the state court's sentencing Terrick to life imprisonment *with* the possibility of parole in accordance with legislative mandates consistent with the pronouncement in *Miller* ran afoul of fair warning principles and deprived him of due process.   Accordingly, Terrick is not entitled to relief on this claim.

In a related vein, Terrick also asserts that his sentence of life imprisonment with parole eligibility after 25 years pursuant to provisions under the new Louisiana Revised Statute 15:574.4 and Louisiana Code of Criminal Procedure article 878.1, retroactively applied, violated the constitutional prohibition against *ex post facto* laws.   Article 1, Section 10, of the Constitution prevents the States from enacting any "*ex post facto* law."   A change in a law violates the *Ex Post Facto* Clause if it "changes the punishment and inflicts a greater punishment than the law annexed to the crime, when committed."   *Calder v. Bull*, 3 U.S. 386, 390 (1798).   "Although the Latin phrase '*ex post facto*' literally encompasses any law passed 'after the fact,' it has long been recognized by [the Supreme Court] that the

constitutional prohibition on *ex post facto* laws applies only to penal statutes which disadvantage the offender affected by them." *Collins v. Youngblood*, 497 U.S. 37, 41 (1990). Retroactive application of a law violates the *Ex Post Facto* Clause only if it: (1) "punish[es] as a crime an act previously committed, which was innocent when done;" (2) "make[s] more burdensome the punishment for a crime, after its commission;" or (3) "deprive[s] one charged with crime of any defense available according to law at the time when the act was committed." *Id.* at 52.

In this case, the Supreme Court's pronouncement in *Miller* necessitated a change in the state statutory sentencing scheme, which at the time Terrick committed the crime as a juvenile, imposed a mandatory sentence for second-degree murder of life imprisonment without benefit of parole, probation or suspension of sentence.[32]    La. R.S. 14:31.    There is no dispute in this case that the trial court retroactively applied the new statutory sentencing law when resentencing Terrick in 2017.    However, a change in a law violates the *Ex Post Facto* Clause only if it "changes the punishment and inflicts a *greater* punishment than the law annexed to the crime, when committed." *Calder*, 3 U.S. at 390 (emphasis added).    No increase in penalty or disadvantage occurred in this case.    Terrick plainly benefited from application of the new sentencing scheme.    He received a less burdensome life sentence that affords him parole eligibility after 25 years.    Thus, his *ex post facto* argument fails.

---

[32]    The text of the relevant state statutes is not restated here, but may be found in the quote extracted from the state-court direct appeal opinion set forth at the beginning of the analysis section.

*See Bueno v. Louisiana*, Civ. Action No. 18-8465, 2019 WL 1177731, at *7-9 (E.D. La. Feb. 20, 2019) (citing *Jones v. LeBlanc*, Civ. Action No. 16-844, 2017 WL 5125766, at *7-8 (E.D. La. March 17, 2017) (retroactive application of La. Rev. Stat. § 15:574.4(D) to resentence juvenile offender to life with the benefit of parole did not violate *ex post facto* laws where petitioner was eligible for parole when he was not previously), *report and recommendation adopted*, 2017 WL 5068346 (E.D. La. Nov. 3, 2017); *Skipper v. Cain*, Civ. Action No. 14-651-JJB-RLB, 2017 WL 6884335, at *4 (M.D. La. Nov. 6, 2017) (state court's retroactive application of La. Rev. Stat. § 15:574.4(A)(2) to amend juvenile non-homicide offender sentence to delete the denial of parole eligibility did not violate *ex post facto* clause where petitioner received a less burdensome sentence of life with the possibility of parole), *report and recommendation adopted*, 2018 WL 3433851 (M.D. La. Jan 9, 2018), appeal docketed; *Skipper v. Vannoy*, 18-30142 (5th Cir. Feb. 2, 2018); and *Juarez v. Davis*, No. 3:16-CV-0843-G(BH), 2018 WL 2164507, at *3-5 (N.D. Tex., March 28, 2018) (application of statute amended after the commission of the offense to resentence a juvenile homicide offender to life imprisonment with parole eligibility after serving 40 years did not constitute an *ex post facto* violation because the reformed sentence allowing for parole eligibility was more favorable than the original sentence of life without parole), *report and recommendation adopted*, 2018 WL 2150943 (N.D. Tex. May 10, 2018), *appeal docketed*, No. 18-10672 (5th Cir. Jun. 7, 2018)).    Accordingly, the state courts' denial of relief on these claims was neither contrary to nor an unreasonable application of established Supreme Court precedent.

*C.  Motion for Abeyance*

Finally, as for Terrick's request that the Court hold this proceeding in abeyance while he continues his efforts in state court to exhaust two additional claims not included in this federal petition, the Court finds no valid grounds exist to grant that motion.    Even when a district court is faced with a "mixed" § 2254 petition containing both exhausted and unexhausted claims, which is not the case here, the Supreme Court has cautioned that a stay-and-abeyance "should be available only in limited circumstances," and is appropriate only when the district court determines that there was "good cause" for the failure to exhaust. *Rhines v. Weber*, 544 U.S. 269, 277 (2005).    Generally, a stay is not proper or warranted when the district court finds that the unexhausted claims would be procedurally barred in the state courts.    *Neville v. Dretke*, 423 F.3d 474, 479-80 (5th Cir. 2005).    During the time this federal application was pending, Terrick's claim regarding his confession was denied by the Louisiana Supreme Court as untimely.    His remaining claim challenging the indictment was rejected as procedurally barred by the state district court.    That procedurally barred claim is still pending supervisory review with the state courts of appeal.    No good cause has been shown to warrant a stay in this case.

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Terrick's Motion for Abeyance (Rec. Doc. 14) be **DENIED.**

It is further **RECOMMENDED** that Terrick's application for federal habeas corpus

relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[33]

New Orleans, Louisiana, this ___13th___ day of _____January_____, 2020.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[33] *Douglass* referenced the previously applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to 14 days.